## DECLARATION OF JOHN D. O'CONNOR

I, John D. O'Connor hereby declare and state as follows:

**I.      EDUCATION AND EXPERIENCE**

1.      I am an attorney and licensed to practice law in all courts in the State of California and have been so licensed since December 1972.  I am currently the principal of O'Connor and Associates, a law firm consisting of myself and three associates that specializes in commercial litigation.  I have forty-seven years of significant trial experience, including current jury trial experience.

2.      In addition to my litigation practice, I have been retained as an attorneys' fees expert on approximately two hundred and fifty occasions and have served as a consulting expert on many more occasions.

3.      My *Curriculum Vitae* is attached hereto as **Exhibit A**.

### Education and Brief Summary of Work Experience

4.      I attended The University of Notre Dame in South Bend, Indiana, where I graduated *magna cum laude* in 1968. In 1972, I graduated *cum laude* from the University of Michigan Law School, where I was a member of the *Order of the Coif* and Associate Editor of the Michigan Law Review.  I was admitted to the California bar in 1972.

5.      After being admitted to the California bar, I held numerous positions at private law firms where my practice focused on trial litigation.  In 1972 and 1973, I was an associate with the trial firm of Belli, Ashe, and Choulos, where I assisted Mr. Melvin Belli in the trial of several large cases and tried three cases on my own.  From January 1974 through December 1979, I was an Assistant United States Attorney for the Northern District of California in San Francisco.  In that capacity, I tried white-collar criminal cases as well as a variety of civil matters.  Much of my civil work with the U.S. Attorney's office involved large claims brought against the government, including one class action, energy pricing and regulatory disputes, and a variety of tort claims.  In 1980 and 1981, I was a senior associate at the prominent San Francisco firm of Brobeck, Phleger, and Harrison.

6.      From 1982 through 2001, I was a principal and managing partner of the law firm

of Tarkington, O'Connor & O'Neill, where our clients were mainly insurance companies, self-insured entities, corporate risk management departments, numerous local governmental entities, and federal entities such as the FDIC, FSLIC, RTC, NCUA, and the United States government.

7.    From 2001 through 2006, I was Special Counsel and a Director (equivalent in a legal corporation to a partner) for the Howard Rice firm, now merged with Arnold and Porter. At Howard Rice, I pursued a high-stakes litigation practice, including defense of R. J. Reynolds Tobacco Company, intellectual property disputes, and financial/professional services litigation.

8.    In late 2006, I formed O'Connor and Associates, a litigation boutique firm engaging in both business and tort litigation, as well as expert work in attorney fee analysis.

**Experience in Attorney Fee Analysis**

9.    In 1977, I began evaluating and litigating fee petitions filed against the United States government and its agencies.  In 1982, I began managing the Tarkington office and as our firm quickly grew to over eighty lawyers, I regularly kept abreast of billing standards in the community, and regularly subscribed to specialized publications geared to law firm management, such as the Altman and Weil annual reports and the monthly published Partners' Report.  I also regularly reviewed more widely published legal periodicals.

10.    As written billing guidelines became in vogue for institutional clients in the mid-eighties, I participated heavily in working with our institutional clients in government, insurance, and other large businesses to establish and implement practical billing standards.  I regularly consulted with these clients about their perception of the positive and negative in our billings, and where appropriate, remedied the same.

11.    I have kept abreast of the billing rates in the Bay Area, California, and generally throughout the country since 1982 when I managed the Tarkington firm.   Because we represented clientele in different business and governmental sectors, it was important for me to be conversant about rates throughout the litigation field ranging from premium to lower, more commoditized rates.

12.    Because our practice at the Tarkington firm often involved coverage, legal malpractice, and reinsurance and excess monitoring work, we reviewed the billings of a wide

variety of firms in our regular practice, including premium-rate billings, lower, highly negotiated insurance defense charges, and standard business litigation charges with rates falling between these two groups.

13. My involvement in legal fee dispute work increased significantly in 1989. In that year, I was the Tarkington partner in charge of our work with failed and failing financial institutions on behalf of the FDIC, FSLIC, RTC, and NCUA. At that time, we had performed extensive work in connection with the failed Golden Valley Bank, Turlock, California, then in Receivership under the aegis of the FDIC. The insurance carrier for the bank insisted that we advise the government to release the insurance carrier from its defense obligations with a nominal payment. After our refusal, the insurance company subjected the Receiver and our firm to numerous audits in an unsuccessful attempt to force the government to release the carrier from its obligations. At this point I necessarily became immersed in the various billing standards prevalent in the community.

14. During these years of legal fee disputes, I spent the majority of my time dealing with the developing field of legal "auditing" and related litigation. As a result, I gained a wide knowledge of auditing practices, prevailing billing standards, and approaches employed by legal fee experts, auditors, and litigators.

15. Due to my growing expertise in the legal fee and auditing issues, during the years 1991 through 2001, I consulted with numerous law firms throughout the country who were seeking my advice on audit criticisms leveled against their practices, almost invariably involved in large fee disputes. I also consulted on numerous occasions with fee payors in fee disputes. I continue this work as a subspecialty of my litigation practice through the present time.

16. At Howard Rice (now merged into Arnold and Porter) from late 2001 through July 2006, we kept informed about both premium rates in the area and rates charged by the wider sector of more market-driven business firms, so that we could in turn appropriately set ours on an annual basis. Because we did work throughout California, our surveys involved both Northern California and Southern California, as well as national firm rates. At Howard Rice, I

served as a JAMS arbitrator in a multimillion-dollar asbestos litigation fee dispute involving hundreds of cases defended under an insurance policy.

17.    I have been retained as an attorneys' fees expert on approximately two hundred and fifty occasions and have served as a consulting expert on many more occasions.  I am frequently tasked with analyzing reasonable rates in a contingent, fee shifting context, in order to determine a reasonable fee award for a given case.  In addition, I have significant experience dealing with complex attorneys' fees issues in other contexts, such as litigating fees in a number of civil rights and other "fee shifting" cases, and being charged by the United States government, as an Assistant U.S. Attorney, to assess and negotiate significant class counsel fees for several different firms who had pursued and obtained a settlement in a very large, class action labor discrimination case against the Naval Air Rework Facility in Alameda.

18.    In total, I have testified as an expert or handled litigations in approximately twenty states.  I regularly review published rate surveys, generally broken down by location, fields of practice, size of firm, and status of lawyer. For the past several years, I have also been consulting and lecturing nationwide through the auspices of the National Association of Legal Fee Analysis ("NALFA"). In addition to lecturing myself, I have attended numerous lectures of legal fee analysts, expert witnesses, and general counsel on fee matters. I had the honor of being named by NALFA the "nation's top attorney fee expert" from 2017 through 2019.

19.    My expert opinions on attorneys' fees frequently receive favorable treatment from courts and arbitrators.  For example, in 2010, I was an attorneys' fees expert retained by class counsel in *Duran v. U.S. Bank*, an employment class action case tried before Honorable Robert J. Freedman, Alameda County Superior Court, in which class counsel was awarded $18.8 million dollars.  Judge Freedman based certain findings favorable to class counsel on "persuasive expert testimony expressed by John D. O'Connor." *Order Granting in Part and Denying in Part Plaintiffs' Motion for Reasonable Attorneys' Fees, Duran*, No. 2011-035537 (Dec. 16, 2010), p. 30.

20.    I have over forty years of significant litigation experience in cases involving free speech and the First Amendment, including numerous cases dealing with the tension between

private property rights and the right to express controversial beliefs and opinions representing commercial property owners, as well as cases involving governmental restrictions, while working on Civil Division cases for the U.S. Attorneys' Office.

21.    In the *Duran* case, Judge Freedman accepted my opinion of the applicable hourly rates of Edward Wynn as being $640 per hour, noting in his opinion that he relied on the undersigned for guidance in this regard:

> The Court finds that Plaintiffs have presented extensive evidence that the hourly rates their attorneys have requested are within the range of rates charged by and awarded to attorneys of comparable experience, reputation, and ability for comparably complex litigation. CHMC, 97 Cal.App.4th 740, 783. That evidence includes: ... *(5) persuasive expert testimony presented by Mr. John D. O'Connor... Based on the evidence before the Court including declarations submitted in support of Plaintiffs' Motion,* the Court finds that Mr. Wynne is highly regarded among his peers for his skill, experience, and tenacity. The Court finds that given Mr. Wynne's experience, demonstrated skill, and reputation, his $640 hourly rate is well within the range of rates charged by and awarded to similarly experienced and qualified attorneys in this area. (Emphasis added. December 12, 2010 Order, pp 26-27). In marked contrast to the Court's findings with respect to Mr. Schratz, the Court finds Mr. O' Connor's declaration to be considerably more persuasive in assessing the relevant issues before this Court. The Court finds Mr. O'Connor's opinions related to the lodestar analysis to be useful, insightful and well-reasoned.

(Duran, et al. v. U.S. Bank Nat'l Ass'n, Sup. Ct. Cal., Alameda Cty., Case No. 2001-035537 (Dec. 16, 2010, p. 26-27, 30).)

22.    I previously testified in a trial in San Francisco Superior Court, *J.R. Marketing, L.L.C. v. Hartford Casualty Ins. Co.*, Case No. CGC-06-449220, and was accepted as a qualified expert by Judge Lynn O'Malley Taylor.  In that case, I testified regarding $12,000,000 in legal fee billings allegedly payable by an insurer for defense work by a national law firm. I also previously testified by Declaration in U.S. District Court for the Northern District of California in *Moore v. Verizon*, Case No. 09-1823 SBA (JSC), and *U.S. v. Nosal*, Case No. 3:08-CR-00237-EMC.

23.    I am familiar with the ADA statutory scheme and attorney fee incentives.  I

defended an ADA disability discrimination case to a jury in 2000, which the plaintiff won, and I agreed to pay significantly higher fees, approximately $500 per hour, to the firm of Dickson Ross.  Additionally, I have given attorney fee opinions in approximately ten ADA cases, and keep current on developments in this area.

24.    Based upon the foregoing, I believe I am qualified to opine on the rates applicable in this case.

## II.    SUMMARY OF OPINIONS

25.    The range of rates which should be applied to the attorneys working on this case range from $400 per hour for certain associates to $595 per hour for partner-level attorneys.

26.    Based upon a variety of factors, I opine that the most appropriate rate for partners' ADA services range from $425 to $700 per hour. The range of requested hourly rates of $550 to $595 for partners with significant ADA experience sought here is clearly reasonable. I opine that the most appropriate range for associates' services range from $250 to $500 per hour.  The hourly rates of $400 and $450 for associates sought here represents the median range of rates, below premium rates, and above the lowest level.

## III.    DISCUSSION

27.    I have been asked to evaluate the rates requested herein by Mr. Langer's counsel and provide my opinion regarding the reasonableness of same.

28.    Consequently, I have reviewed the motions filed herein, recent rates awarded in the Central District, and disability billing rates in Los Angeles in general; as noted above I have kept abreast of these rates since at least 2000.

**Plaintiff's Counsel's Experience**

29.    I now briefly recite Plaintiff's counsel's experience, although I note that a more complete recitation of counsel's experience is included in Mr. Potter's Declaration:

      a.    Russell Handy, barred in 1998, has 21 years of experience, the last 19 of which were devoted to disability litigation, and has litigated in excess of 1,000 ADA cases;

      b.    Phyl Grace, barred in 1994, has 25 years of experience, the last 10 of which

1    were devoted to disability litigation;

2    c.    Ray Ballister, barred in 1983, has 35 years of experience, the last 14 of which

3    were devoted to disability litigation;

4    d.    Dennis Price, barred in 2011, has 8 years of experience, the last 7 of which

5    were devoted to disability litigation, has been involved in hundreds of

6    disability cases;

7    e.    Chris Carson, also barred in 2011, has 8 years of experience, more than the

8    last 5 of which have been devoted to disability litigation;

9    f.    Amanda Seabock, barred in 2013, with 6 years of experience, has devoted

10    her entire legal career to disability access, joining Potter Handy in 2012 first

11    as an intern and then as an attorney;

12    g.    Sara Gunderson, barred in 2015, has 4 years of experience, the last two of

13    which were devoted to disability litigation;

14    h.    Bradley Smith, barred in 2014, has 5 years of experience, the last year of

15    which has been devoted to disability litigation;

16    i.    Jennifer McAllister, barred in 2012, has 7 years of experience.

17    **Central District – Los Angeles ADA Fee Awards**

18    30.    The first step in the determination of a lodestar figure is to determine the

19    reasonable hourly rate to be applied. A court awarding attorney fees must look to the prevailing

20    market rates in the relevant legal community.  (*See Blum v. Stenson* (1984) 465 U.S. 886, 895.)

21    Here, the relevant legal community is the Central District of California Western Division,

22    located in Los Angeles.

23    31.    This District has previously found the rates herein requested to be reasonable for

24    other ADA attorneys of similar experience as Potter Handy attorneys.  In *Rocca v. DEN 109 LP*,

25    Case No. 2:14-cv-00538-ODW(MRW) (C.D. Cal. Jun. 13, 2017), the court awarded Scottlynn

26    Hubbard, barred in 2001 with sixteen years of experience, an hourly rate of $600, and Khush

27    Mehton, barred in 2011 with six years of experience, an hourly rate of $400.  In finding the

28    requested rates reasonable, the court cited to *Camarillo v. Cty. Of Maywood*, No. CV 07-3469-

1    ODW which found that an hourly rate of $650 was reasonable for other similarly experienced

2    civil rights counsel.

3        32.    Next, I review of Plaintiff's counsel's prior fee awards in the Central District.

4    Plaintiff's counsel has recently been awarded the rates herein sought in two recent Central

5    District ADA cases.

6        33.    First, in *Lindsay v. Grupo Glemka*, No. CV 18-5136-MRW, the court awarded

7    hourly rates ranging from $400 to $595 in July 2019.  In so finding, the *Lindsay* court stated:

> The Court summarily accepts the stated rates of the lawyers at the
> Potter Handy firm.  The rates are supported by a sworn
> declaration attesting to the background, education, and experience
> of the lawyers.  *The hourly rates ain't cheap, but they're
> comparable to other big-city, plaintiff's side, contingency-
> compensation lawyers that this Court regularly sees in ADA*,
> Section 1983, and Song-Beverly Act (state auto lemon law) cases.
> Any inconsistency in the requested rates… works to the
> advantage of the defense.

14   *Lindsay v. Grupo Glemka*, No. CV 18-5136-MRW (C.D. Cal. July 19, 2019) [D.N. 40 at pp. 2-

15   3] (emphasis added).  A true and correct copy of the Court's Order is attached hereto as

16   **Exhibit B**.

17       34.    This District, again, awarded hourly rates ranging from $400 to $595 in *Antonio

18   Fernandez v. Rubicelio Salgado et al*. *See Antonio Fernandez v. Rubicelio Salgado et al*., No.

19   CV 19-01817-SK (C.D. Cal. Sep. 16, 2019) [D.N. 36].  A true and correct copy of the Court's

20   Order is attached hereto as **Exhibit C**.  I note that the *Fernandez* order confirmed Potter

21   Handy's rates, but reduced the number of hours reasonably expended by 4.6 to account for the

22   lack of oral argument on the fee motion, thereby awarding $13,670.50 in fees rather than the

23   $15,740.50 requested ($15,740.50 - $13,670.50 = $2,070 ÷ 4.6 = $450, the rate awarded to Mr.

24   Price, the Potter Handy attorney who billed for work on the fee motion).  In *Fernandez*, this

25   District awarded Ms. Grace and Mr. Ballister $550; Mr. Carson, Ms. Seabock, and Mr. Price

26   $450; and Ms. Gunderson, Ms. McAllister, and Mr. Smith $400.  Attached hereto as **Exhibit D**

27   is a true and correct copy of Potter Handy's billing records submitted as an exhibit to the

28   *Fernandez* fee motion demonstrating the rates awarded.

35.     However, despite these recent rate awards, Potter Handy attorneys have been awarded much lower rates in 2019 based on previous fee awards in this District that have confirmed rates first awarded in 2011.

36.     In *Brian Whitaker v. EQ-Hikari Landlord, LP, et al.,* decided subsequently to the two fee awards discussed above, the court awarded Mr. Potter, Mr. Handy, and Ms. Grace an hourly rate of $425. *See Brian Whitaker v. EQ-Hikari Landlord, LP, et al.*, No. CV 19-05623 (C.D. Cal Nov. 8, 2019) [D.N. 27].  The *Whitaker* court cited other Central District orders awarding $425 to Mr. Potter, Mr. Handy, and Ms. Grace decided as recently as August 8, 2019, and stated, "because Plaintiff's counsel have not explained the sudden 30-40% increase in their hourly rates from $425 to $595 for attorneys Potter and Handy and $550 for attorney Grace, the Court sets Plaintiff's counsels' hourly rates at $425, as this Court has previously approved." *Id.* at p.3.  The *Whitaker* court's order did not reference the *Lindsay* or *Fernandez* awards.

37.     In *Adam Ghadiri v. Carpet and Linoleum City el al.*, No. CV 18-01869-AG (November 12, 2019), this District again awarded hourly rates ranging from $250 to $425.  The *Ghadiri* court acknowledged the *Lindsay* fee award, stating "but this lone case fails to convince the Court that the rates are reasonable.  Several district court decisions, including this Court's own decision, weigh against finding Plaintiff's requested rates reasonable." *Adam Ghadiri v. Carpet and Linoleum City el al.*, No. CV 18-01869-AG (C.D. Cal. Nov. 12, 2019) [D.N. 76]. The *Ghadiri* court then cited to various Potter Handy rate awards of $250 to $425 dating back to May of 2016.

38.     However, Potter Handy attorneys, Mr. Handy and Mr. Ballinger, were first awarded an hourly rate of $425 in *Salinas v. Rite Aid* in March 2011. *See Gilbert Salinas v. Rite Aid Lease Management Compant et al.*, No. CV 10-7499 (Mar. 17, 2011).  The *Salinas* court also awarded nine-year associate an hourly rate of $375. Potter Handy attorneys have frequently appeared in this District since *Salinas* but continued to be awarded the same hourly rates.

39.     I opine that the *Lindsay* court's analysis and rate award, later confirmed by the *Fernandez* court, is correct, and that the *Salinas* 2011 reasonable rate award must finally be laid to rest.  The fundamental difference between the rate awards in *Lindsay* and the rate awards in

*Whitaker* and *Ghadiri* is the analysis applied in determining the reasonable rate. As discussed above, the *Lindsay* court analyzed the prevailing rate in the community for ADA litigation, whereas the *Whitaker* and *Ghadiri* courts analyzed the rates recently awarded to Potter Handy in this District. While recent rate awards are probative of an attorney's reasonable rate, such analysis can result in the bootstrapping of outdated rates that have fallen out of line with the rates prevailing in the Los Angeles community for ADA and other civil rights litigiation. As stated above, caselaw is clear that the reasonable rates are to be based on prevailing market rates in the relevant legal community. *See Blum v. Stenson* (1984) 465 U.S. 886, 895 n. 11.

40.    *Moreno v. City of Sacramento*, (9th Cir. 2008) 534 F.3d 1106, specifically cautioned against the result achieved by the *Whitaker* and *Ghadiri* courts. The *Moreno* court held:

> *District* judges can certainly consider the fees awarded by other judges in the same locality in similar cases. *But adopting a court-wide policy--even an informal one--of "holding the line" on fees at a certain level goes well beyond the discretion of the district court.* One problem with any such policy is that it becomes difficult to revise over time, as economic conditions change; here the rate apparently hadn't changed for 10 years, and even a $ 50 increase in the hourly rate was considered a "big step . . . for the court generally." *Unless carefully administered and updated, any such policy becomes a strait-jacket. More fundamentally, such a policy--no matter how well intentioned or administered--is inconsistent with the methodology for awarding fees that the Supreme Court and our court has adopted. The district court's function is to award fees that reflect economic conditions in the district; it is not to "hold the line" at a particular rate, or to resist a rate because it would be a "big step."* If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate without regard to any contrary practice.

Moreno v. City of Sacramento (9th Cir. 2008) 534 F.3d 1106, 1115 (emphasis added). To wit, "holding the line" would, in the words of the *Lindsay* court, work to the advantage of the defense.

41.    The *Moreno* court's finding is bolstered by the legislative intent of the ADA. In *Perdue v. Kenny A.*, (2010) 559 U.S. 542, the Court noted that Congress enacted the ADA to incentivize attorneys to take ADA cases and to be reasonably compensated for their time.

Failing to allow for rates to increase over the better part of a decade would have a chilling effect on attorneys in the ADA field and deprive plaintiffs of skilled representation to enforce their rights. That the *Lindsay* court cited *Perdue* in its analysis further demonstrates that the *Lindsay* court's finding, and not the *Whitaker* or *Ghadiri* courts' findings, is more consistent with well-settled case law governing the determination of a reasonable hourly rate.

42.     I further note that both *Lindsay* and *Rocca* correctly cite to other civil rights litigation rates when determining the prevailing rates for ADA attorneys. ADA litigation is indeed civil rights litigation. However, ADA rates have lagged behind other civil rights litigation rates in this District. Such a result contravenes *Perdue* and would only deter plaintiffs counsel from litigating ADA cases.

43.     Both the *Whitaker* court and the *Ghardiri* court found that Potter Handy had not justified the sudden increase of the rates requested in 2019. In 2019, eight years after the *Salinas* fee award, Potter Handy reassessed the prevailing rates in the community and began requesting rates more in line with the Los Angeles community for ADA and other civil rights litigation. This District has already confirmed that Potter Handy's reassessed rates are indeed reasonable and in line with the prevailing rates in the Los Angeles community. As discussed more fully below, the *Laffey* Matrix further supports the *Lindsay* and *Fernandez* findings that Potter Handy's reassessed rates are reasonable and are consistent with inflation in the legal market since 2011.

### *Laffey* Matrix

44.     The Laffey Matrix was developed in the case of *Laffey v. Northwest Airlines, Inc.* (D.D.C. 1983) 572 F.Supp. 354, 371, in the District Court for the District of Columbia, precisely for the purpose of determining reasonable fees in cases where an appropriate billable rate needed to be determined. The Department of Justice in Washington, D.C. maintains a *Laffey* Matrix which adjusts the fees on the *Laffey* case based upon the general inflation rate.

45.     Because of the difference in inflation rates, the rate applicable for a lawyer of twenty years experience, such as the billing partners in this case, varies significantly from one legal community to the other.

46.     In my opinion, the more senior partners' services are appropriately recompensed under the 2019 DOJ *Laffey* Matrix, for a fee of approximately $595 per hour for an attorney with 21-30 years of experience, $566 for an attorney with 16-20 years of experience, $510 for an attorney with 11-15 years of experience, $433 for an attorney with 8-10 years of experience, $372 for an attorney with 6-7 years of experience, $365 for an attorney with 4-5 years of experience. *See* **Exhibit E**.

47.     In accordance with *In re Chiron, supra*, and *In re HPL Techs., Inc., Secs. Litig.* 366 F. Supp. 2d 912, 921-22 (N.D. Cal. 2005), however, this rate should be adjusted to reflect the cost of living in Los Angeles as opposed to that of Washington, D.C.  To make this adjustment, I have relied on the 2019 federal locality pay differentials based on federally compiled cost of living data. The 2019 federal locality pay differentials may be found at https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2019/general-schedule/. The 2019 pay tables show that the Washington-Baltimore area has a +29.32% locality pay differential, while Los Angeles has a differential of +31.47%. *See* **Exhibit F**.  Applying the *In re HPL* formula, the appropriate rate for Sacramento is +1.66%.  Thus, the cost of living adjustment to the $595 Laffey matrix figure yields an hourly rate of approximately $605 per hour, the $566 Laffey matrix figure yields an hourly rate of approximately $575, the $510 Laffey matrix figure yields an hourly rate of approximately $518, the $433 Laffey matrix figure yields an hourly rate of approximately $440, the $372 Laffey matrix figure yields an hourly rate of approximately $378, the $365 Laffey matrix figure yields an hourly rate of approximately $371. *See* **Exhibit G**. These rates are quite comparable with the rates of Jackson Lewis and Littler Mendelson, both prominent ADA defense firms.

48.     This Laffey Matrix provides a good estimate of the generally prevailing rates in the community for established, reputable firms of good skill, which then can be adjusted for cost of living differentials in various legal markets throughout the country.  (*See In re Chiron Corp. Sec. Litig.* (N.D. Cal. Nov. 30, 2007) 2007 WL 4249902,; *In re HPL Techs., Inc., Secs. Litig.* (N.D. Cal. 2005) 366 F. Supp. 2d 912, 921-22.)  This District has previously used the *Laffey* Matrix when analysis's requested hourly rates. *See Smith v. Couthy of Riverside*, No. CV

16-227-JG B (C.D. Cal. June 17, 2019) ("Because the *Laffey* matrix has some tendency to make it more probably that Plaintiff's counsel's hourly rates are in line with those prevailing in the community, it is relevant.")

49.    I believe that the DOJ Laffey Matrix is an excellent tool for determining reasonable rates for excellent firms throughout the country, and serves as an effective reference point when evaluating the reasonableness of an hourly rate awarded.  The adjusted Los Angeles *Laffey* rates are much more in line with the rates herein sought, and awarded in *Lindsay* and *Fernandez*, than the 2011 reasonable rates recently awarded in *Whitaker* and *Ghadiri*.

50.    This matrix does not in this form reflect premium rates – that is, those above the prevalent reasonable rates charged throughout the legal market for established, reputable firms.

51.    There are some highly complex cases where it is appropriate to charge premium rates, as well as instances where an unusually highly skilled lawyer merits these fees in an appropriate case calling for such skill.

52.    In any case, the DOJ Laffey Matrix rates are often applied in cases where the client is not actually paying fees, and this Matrix applies the prevailing fees.

### San Francisco Rates

53.    My opinion is bolstered by recent fee awards for ADA cases venued in the Northern District of California and discussed below.  I note that San Francisco rates, while slightly higher than Los Angeles rates, are generally in line with Los Angeles rates.  While not controlling, San Francisco rate awards reflect that ADA rates have steadily increased over the years and have greatly exceeded the rates awarded in Los Angeles.  I opine that this District must follow suit and allow ADA plaintiff's counsel's rates to increase over time to reflect increased skill and experience.

54.    In *Rodriguez v. Barrita, Inc.* (N.D. Cal. 2014) 53 F. Supp. 3d 1268, the court awarded Ms. McGuinness, then a twenty-two year attorney, an hourly rate of $550, despite recent rulings awarding an hourly rate of $495 less than one year prior to the *Rodriguez* fee award.  The *Rodriguez* court also awarded Mr. Rein, an attorney with over forty-five years of experience, an hourly rate of $645, and Ms. Cabalo, an associate with seven years of

experience, an hourly rate of $425.

55.    In *Martin v. Diva Hosp. Grp., Inc.* (N.D. Cal. Dec. 7, 2018) No. 16-cv-04103-EDL, 2018 U.S. Dist. LEXIS 217004, the court found that a reasonable hourly rate for Ms. McGuinness of $700, even though the *Rodriguez* court found that $550 was a reasonable rate four years earlier.  The *Martin* court found Mr. Rein's reasonable hourly rate to be $795, even though the *Rodriguez* court found his reasonable hourly rate to be $645.  The *Martin* court also found that a reasonable hourly rate for Mr. Derby, then a twenty-eight year attorney, was $700, and the reasonable hourly rate for Mr. Clefton, a paralegal who later was sworn into the bar in December 2017, was $200 for his work as a paralegal and $375 *as a first-year associate*.

56.    In *Rodgers v. Claim Jumper Rest., LLC*, (N.D. Cal. Apr. 24, 2015), No. 13-CV-5496-YGR, 2015 U.S. Dist. LEXIS 54164, the found that a reasonable hourly rate for Mr. Gong, then an attorney with 19.5 years of experience with 8 years of ADA experience trying 75-85 ADA claims, was $525. The *Rodgers* court found that "courts in the Northern District have found that rates between $450 and $650 per hour represent reasonable rates for attorneys with skill, experience and reputation similar to Mr. Gong." (*Rodgers v. Claim Jumper Rest., LLC* (N.D. Cal. Apr. 24, 2015) No. 13-CV-5496-YGR, 2015 U.S. Dist. LEXIS 54164, at *12-13.)

57.    Mr. Gong was then awarded an hourly rate of $650 in *Dytch v. Lazy Dog Rests., LLC* (N.D. Cal. Aug. 16, 2019) No. 16-cv-03358-EDL, 2019 U.S. Dist. LEXIS 143298, noting that the *Rodgers* court found Mr. Gong's reasonable rate to be $525 four years earlier, but finding that the rate increase was reasonable as Mr. Gong had not increased rates since *Rodgers*.

58.    As such, I opine that this District should similarly allow attorney's rates to increase overtime.  I further note that the discrepancy between the upper bound of rates awarded to partners in San Francisco and the 2011 rates awarded to Potter Handy attorneys confirmed this year in *Whitaker* and *Ghadiri* further demonstrates that the *Whitaker* and *Ghadiri* rates are unreasonably low.

## Recommended Rates

59.    In light of the foregoing, I opine that the reasonable hourly rates, as confirmed by

*Lindsay* and *Fernandez*, are as follows:

    a. $595 for Mr. Handy

    b. $550 for Mr. Ballister and Ms. Grace;

    c. $450 for Mr. Price, Ms. Carson, and Ms. Seabock;

    d. $400 for Ms. Gunderson, Mr. Bradley, and Ms. McAllister.

   I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of November 2019 in San Francisco, California.


_____

JOHN D. O'CONNOR

# Exhibit A



**O'CONNOR**
**AND ASSOCIATES**
*Special Counsel Services*

201 Mission Street, Suite 710 - San Francisco, CA 94105
T: 415-693-9960 / F: 415-692-6537 / www.joclaw.com



**JOHN D. O'CONNOR**
**201 Mission Street, Suite 710**
**San Francisco, CA 94105**
**Phone:   415-693-9960**
**Direct:   415-464-6250**
**Mobile: 415-999-2528**
**john@joclaw.com**

### *CURRICULUM VITAE*

**Education**

University of Michigan Law School, *cum laude* – Juris Doctorate, 1972

- Member, Michigan Law Review (1970-1972), Associate Editor (1971-1972)
- Member, *Order of the Coif* (1971-72)
- Winner of three AmJur awards as the most outstanding student in a subject.

University of Notre Dame, *magna cum laude* – A.B., 1968

**Work Experience**

    Associate, Belli, Ashe & Choulos – 1972-1973
- Dealt mainly with assessing and negotiating "splits" with other attorneys of contingency fees

    U.S. Attorney's Office, Civil Division – 1977-1979
- Dealt with attorneys fees, "fee-shifting" civil rights cases; assessed, negotiated, and litigated attorneys fees in both individual cases and class action cases; litigated Saunders v. NARF in the 9th Circuit

    Senior Associate, Brobeck Phleger and Harrison – 1980-1981
- Working for prestigious litigation firm, learned staffing and billing procedures and protocols for large commercial cases

    Managing Partner, Tarkington, O'Connor and O'Neill – 1982-2000
- Managing partner responsible for all firm billings

- Supervised billing seminars for newly graduated and recently hired lawyers within firm
- Kept current both with hourly fees charged in the community and billing protocols for various firms and cases throughout the area
- Subscribed to various periodicals such as <u>Partners Report</u> and <u>Altman & Weil</u> annual reports (Altman & Weil is a nationally known law firm consultant organization)
- Consulted with insurance executives regarding billing procedures for their companies
- Consulted with insurance claims executives regarding CUMIS issues including billing rates for various types of litigation throughout the Bay Area
- Worked with various government agencies, such as FDIC, FLIC, NCUA, and RTC regarding appropriate billing protocols, and discussed bills with government officials regarding compliance; Dealt with governmental auditors regarding same
- Consulted with insurance executives regarding CUMIS issues; was resource for those executives negotiating CUMIS fees with independent counsel
- Represented numerous entities including governmental entities, in attorneys fees litigation (e.g. in the Sonoma County jail class action litigation, litigated the fees of Heller Ehrman in a fee-shifting civil rights context)
- Defended legal malpractice cases and examined legal malpractice and other professional liability cases for clients, including the conservators and receivers of failed and failing financial institutions
- Interacted with legal counsel and claims executives for governmental and insurance clients in review and analysis of firm billings
- Dealt with <u>Brandt</u> fee issues both as a plaintiff and defendant in insurance coverage cases
- From time to time reviewed bills of firms in underlying cases while representing insurers, reinsurers and access carriers
- Significant work regarding legal fee auditing and litigation regarding legal fees and legal fee auditing, detailed below

Director (Partner) and Special Counsel, Howard Rice – 2001-2006
- Regularly apprised of market rates of competing law firms, as firm annually reset its rates
- Acquired knowledge of total fees charged on various complex cases, both by the Howard Rice firm and others

- Named arbitrator on 3-arbitrator JAMS panel regarding over $2,000,000 of asbestos billings; heard and evaluated testimony of competing fee experts and auditors

Principal, O'Connor and Associates – 2006-Present
- Expert witness and consultant, legal fees and litigation management
- Member, National Association of Legal Fee Analysis

**Overview of Services**

John D. O'Connor offers expert consultant services in a variety of attorney fee and litigation management contexts. He is regularly employed as both an expert and litigator in attorney fee disputes, confidential consultation. His services often involve an analysis of the skill and efficiency of attorneys in litigation and litigation management.

**Background and Qualifications**

John O'Connor has over 40 years of experience in a wide variety of litigation matters, ranging from personal injury to civil rights and employment to complex business cases. A significant part of that experience is the trial of over 70 cases in both state and federal Courts throughout the country, and the preparation for and settlement of many more. Additionally, for 20 years, O'Connor functioned as managing partner of a substantial litigation firm. His law firm experience includes partnerships in small boutique firms, a substantial mid-sized firm, and larger nationally known firms.

A significant portion of his work for over 35 years has been the evaluation, litigation and resolution of attorney fee issues. First as an Assistant United States Attorney, and later representing county and municipal governments, O'Connor has represented potential fee payors under "fee shifting" statutes.

As a private lawyer for federal government agencies during the financial institutions crises of the 1980's and 90's, and as well working with a variety of insurers and self-insurers, O'Connor has worked to develop with the client, and implement on behalf of his law firm, sophisticated billing guidelines. O'Connor has worked with many clients in mutually cooperative fashion to examine firm billings, assure compliance and rectify short comings.

Since the advent in the late 1980's of adversarial legal auditing, O'Connor has served extensively as both an expert and litigator analyzing audit criticisms, applying community standards, and construing applicable case law. In this context, O'Connor has consulted on hundreds of adversarial legal fee disputes over three decades. He has as well served as JAMS mediator, a litigator representing both law firms and fee payors on fee issues, and an expert witness both through written Declaration and oral testimony.

# Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5136 MRW | Date | July 19, 2019 |
|---|---|---|---|
| Title | Lindsay v. Grupo Glemka | | |

| Present: | Hon. Michael R. Wilner, U.S. Magistrate Judge |
|---|---|

| Veronica Piper | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys for Plaintiff: | Attorneys for Defendant: |
|---|---|
| n/a | n/a |

**Proceedings:**     ORDER RE: FEES IN ADA CASE

1.     This is a disability rights case.  The parties settled the liability and damages components of the action at a settlement conference with Judge Wilner in March 2019. (Docket # 31.)  The parties further agreed to: (i) consent to the transfer of the remainder of the action to Judge Wilner; and (ii) resolve the issue of fees and costs by motion practice.

\* \* \*

2.     The law governing such a motion is relatively straightforward.  The ADA (42 U.S.C. § 12205) and the parallel state provisions[1] authorize the assessment of "a reasonable attorney's fee, including litigation expenses and costs" for a prevailing party. A "reasonable fee" is one that is "sufficient to induce a capable attorney to undertake the representation" of a disability rights action.  Perdue v. Kenny A., 559 U.S. 542, 552 (2010).  A district court must "compensate counsel at the prevailing rate in the community for similar work; no more, no less."  Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008).

3.     The Ninth Circuit expressly endorses the "lodestar" method of fee calculation in ADA actions.  Vogel v. Harbor Plaza Center, 893 F.3d 1152, 1158 (9th Cir. 2018).  This requires a district court to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The court "has discretion in determining a reasonable fee," but "must exercise that discretion consistently with the[se] principles."

---

[1]     Plaintiff does not contend that the principles of fee recovery under California law are materially different.  (Docket # 36-1 at 15.)  For clarity, the Court takes up the fee request by applying federal law.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5136 MRW | Date | July 19, 2019 |
|----------|----------------|------|---------------|
| Title | Lindsay v. Grupo Glemka | | |

Vogel, 893 F.3d at 1158. If the court "believes the overall award is too high, it needs to say so and explain why." Moreno, 534 F.3d at 1113.

4.       The defense also has a responsibility in what the Circuit calls the "tedious business" of reviewing fee applications. Id. at 1116. A party opposing a fee application has "the burden of producing a sufficiently cogent explanation" of "excessive or duplicative billing practices." Id. "Vague" or unsupported objections to bill entries may be "unpersuasive" in demonstrating that a claim is unnecessary, excessive, or unreasonable. Schutza v. City of San Diego, 756 F. App'x 768, 769-70 (9th Cir. 2019). Nevertheless, the court always has "a duty to ensure that claims for attorneys' fees are reasonable." Vogel, 893 F.3d at 1160 (quotation and emphasis omitted).

\* \* \*

5.       With these principles in mind, the Court closely reviewed the fee request that Plaintiff's attorneys submitted. The law firm – a frequent and prominent litigant in our Court – seeks fees of nearly $23,000 for over 45 hours of billed legal time. The bills reflect a range of attorney rates from $400 to $595 per hour. Plaintiff also seeks recovery of costs (filing fees, expert work, investigator) of approximately $2,700. The application is supported by a declaration from the firm's founding partner, detailed billing statements, and orders from other federal courts regarding the reasonableness of previous bills and rates from the Potter Handy firm. (Docket # 36-3, 36-4.)

6.       The Court also independently reviewed the docket in this action. It reveals considerably more legal activity than the typical ADA access case. The action has been active for over a year before its transfer to Judge Wilner. Following service of process, Plaintiff initiated default proceedings against the defense. (Docket # 10-12.) The district judge conducted two scheduling conferences in the action. (Docket # 20-22.) Plaintiff amended the complaint after litigation resumed. (Docket # 24.) The parties then prepared for and attended a (successful!) settlement conference on relatively short notice. (Docket # 28-31.) The case settled for a high-end civil penalty in Plaintiff's favor.

7.       ***Billing rates*** – The Court summarily accepts the stated rates of the lawyers at the Potter Handy firm. The rates are supported by a sworn declaration attesting to the background, education, and experience of the lawyers. The hourly rates

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5136 MRW | Date | July 19, 2019 |
|---|---|---|---|
| Title | Lindsay v. Grupo Glemka | | |

ain't cheap, but they're comparable to other big-city, plaintiff's-side, contingency-compensation lawyers that this Court regularly sees in ADA, Section 1983, and Song-Beverly Act (state auto lemon law) cases. Any inconsistency in the requested rates (e.g., the Potter, Handy, and Grace rates in the Love case in the Northern District earlier this year were considerably higher than in this case (Docket # 36-10)) works to the advantage of the defense.

8.     The defense's response – hey, they're "a mill." (Docket # 37 at 6.) Defendants argue that, because Potter Handy files so many ADA cases, they perform "glorified collection work" that should be billed at only $200 per hour. Ouch!

9.     And not really persuasive. The rate that the lawyers charge reflects the specialization of the firm and the very real risk that the lawyers will not be compensated at all in these contingency cases. Congress enacted the ADA to incentivize attorneys to take these cases and get paid for their time. Perdue. The Court is well aware of the number of defaults and uncollected / uncollectable judgments that the Potter Handy firm racks up in our district. The rates charged here – whether Ms. Lindsay ever saw the bill or not (Docket # 37 at 3) – are appropriate to encourage lawyers to pursue this type of case. Perdue, 559 U.S. at 552; Moreno, 534 F.3d at 1111. Mr. Rubel's speculative "collection rate" argument is patently insufficient to warrant a different calculation.

10.     ***Hours billed*** – Here's where (as Judge Kozinski called it in Moreno) there's a bit of a "haircut." The defense utterly failed to carry its legal burden of "producing a sufficiently cogent explanation" as to why the number of hours charged was excessive. Name-calling doesn't count; neither does asserting one's "position" (without evidence) that Potter Handy allegedly didn't perform the listed work. (Docket # 37 at 6-8.)

11.     But I can poke at some of the unreasonable billing myself. A close review of the billing statement (Docket # 36-4) shows some dubious charges that, eventually, add up. I have real difficulty in believing that it took Ms. Carson 66 minutes to read the standard case-commencing documents and orders, or to have a secretary mail them to the client. (6/8-16/19 billing entries). Those charges are rejected. Similarly, I doubt that it took Ms. Grace 90 minutes across two days (10/9 and 10/29/18) to review the CASp reports that she likely sees every day of her professional life. A more reasonable estimate is 30 minutes; one hour deducted.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 18-5136 MRW | Date | July 19, 2019 |
|---|---|---|---|
| Title | Lindsay v. Grupo Glemka | | |

12.     More from my deep dive.  It's not clear why it took Mr. Seaback <u>longer</u> to revise the complaint and supporting documents than for the original drafting (1/28/19). 72 minutes of time is reduced to 30.  And the "estimated" 8 hours for the six-page reply brief (Docket # 39) and travel for argument on the fee motion are out.  The Court is ruling on the fee issue <u>without</u> a hearing.  If it took 2 hours to draft the original motion (picture the judge scowling a bit at that one), then it certainly took far less to read the defense papers and fire off the reply.  1 hour total compensation for the review and reply (picture him scowling again).

13.     By my math, that's a discount of $5,525 at the stated rates of the named lawyers.  But note that there's no change to the remainder of the bill.  The firm was entitled to charge for the multiple court appearances, the travel to and from the settlement, and the rest of the fairly extensive litigation tasks.  As reduced above and for those stated reasons, the Court concludes that **$17,448** represents a reasonable amount of attorneys' fees in this action.

14.     ***Costs*** – The Court grants the cost bill (**$2,677.99**) in full.  The defense does not dispute that Plaintiff paid the filing fee in this case.  The extent of the defense's objection is, well, the supposition that the other costs weren't really incurred.  (Docket # 37 at 8.)  That doesn't cut it.  <u>Schutza</u>, 756 F. App'x at 769-70.  Mr. Potter signed a sworn declaration attesting to the costs.  Additionally, Ms. Kent (the site inspector) provided a fairly clear invoice for the services provided in visiting the store and writing up the report.  (Docket # 36-9.)

15.     Yes, the Court could demand a cancelled check, proof of financial independence from the law firm (both suggested in Defendants' brief), or a video of the investigator and inspector toiling away (that's my idea) to verify the bills.  But the evidence received is itself sufficient to demonstrate that the costs were reasonably incurred.  42 U.S.C. § 12205.  The defense hasn't proved otherwise.[2]

---

[2]     The bulk of the defense's challenge to the fee application deals not with the substance of the application, but its filing date.  (Docket # 37 at 1-3.)  Defendants correctly observe that Plaintiff filed the motion several days after the deadline that the Court set.  (Docket # 35, 36.)  But neither the defense nor the Court was prejudiced by this minor infraction.  The Court also notes the explanation offered in Plaintiff's reply submission.  (Docket # 39-1.)  While no judge countenances an unexcused late filing, that's not an equitable basis for denying fees entirely, as the defense requests.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 18-5136 MRW | Date | July 19, 2019 |
|----------|----------------|------|---------------|
| Title | Lindsay v. Grupo Glemka | | |

* * *

16.     Defendants are ordered to pay the total sum of **$20,125.99** to Plaintiff's attorneys as fees and costs.  Plaintiff will submit a proposed judgment for the Court to enter.  Payment in full will be required within 60 days from the entry of that judgment.

# Exhibit C

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**Antonio Fernandez**,

       Plaintiff,

  v.

**Rubicelio Salgado,** in individual and representative capacity as trustee of the Salgado Family Trust; **Idalia Salgado,** in individual and representative capacity as trustee of the Salgado Family Trust; **JCN Group, Inc,** a California Corporation; and Does 1-10,

       Defendants.

**Case:** 2:19-CV-01817-SK

**[PROPOSED]** ORDER GRANTING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

Plaintiff's Motion for Attorneys' Fees is granted.

    Plaintiff shall be awarded attorneys' fees in the amount of $13,670.50.

    Plaintiff shall be awarded litigation costs in the amount of $720.00.

**IT IS SO ORDERED.**

Dated: September 16, 2019

STEVE KIM
U.S. MAGISTRATE JUDGE

# Exhibit D



# Center for Disability Access
## Billing Summary

| | |
|---|---|
| **Case:** | Fernandez v. Salgado |
| **Case No:** | 2:19-CV-01817-DSF-SK |
| **Venue** | Central |
| **Billing Range:** | 2/21/2019 *through* 6/19/2019 |
| **Total Hours** | 33.4 |
| **Hourly Bill** | $15,740.50 |
| **Litigation Expenses** | $720.00 |

**Total Bill:**  **$16,460.50**

| Expense Detail | |
|---|---|
| Investigator | $200.00 |
| Filing Fees | $400.00 |
| Service Costs | $120.00 |
| | |
| | $720.00 |

9845 Erma Road, Suite 300
San Diego, CA 92131

Phone: 858-375-7385
Fax: 888-422-5191

# Center for Disability Access

## Billing Statement

| Date | Description | Biller | Time | Hourly Rate | Amount |
|------|-------------|--------|------|-------------|--------|
| 2/21/2019 | met with client; discussed his case; discussed his contacts with the geographical area for standing purposes and his likelihood of returning to maintain federal jurisdiction | M. Potter | 0.9 | 595 | $535.50 |
| 2/21/2019 | reviewed the site via Google Maps to conduct an assessment of the allegations; instructions to investigator about photos and measurements wanted. | M. Potter | 1.2 | 595 | $714.00 |
| 3/6/2019 | reviewed investigator Louis' report and photos; phone conversation with him regarding the same; updated case notes | C. Carson | 1 | 450 | $450.00 |
| 3/11/2019 | conducted public records research to determine the identity of the responsible parties and to determine if there had been alterations or modifications that would have triggered stricter Title 24 obligations for this property: 6374-001-008 | C. Carson | 2.2 | 450 | $990.00 |
| 3/11/2019 | drafted the complaint | C. Carson | 0.9 | 450 | $405.00 |
| 3/11/2019 | reviewed and executed the front matter (civil case coversheet, summons, certificate of interested parties, etc.) | C. Carson | 0.3 | 450 | $135.00 |
| 3/14/2019 | reviewed court-issued summons, notice of assignment, notice to parties of court directed ADR program | C. Carson | 0.2 | 450 | $90.00 |
| 3/18/2019 | instructed assistant to send a copy of Complaint to client | C. Carson | 0.1 | 450 | $45.00 |
| 4/1/2019 | reviewed and analyzed answer and  certificate of interested parties filed by defendants; updated case notes | C. Carson | 0.9 | 450 | $405.00 |
| 4/3/2019 | instructed assistant to contact defense counsel requesting a call back to discuss case/settlement | P. Grace | 0.1 | 550 | $55.00 |
| 4/10/2019 | reviewed order reassigning the case, notice to parties and standing order | C. Carson | 0.3 | 450 | $135.00 |
| 4/12/2019 | dictated contact me letter to assistant; instructed assistant to email the same to defense counsel | P. Grace | 0.2 | 550 | $110.00 |
| 4/12/2019 | reviewed application for Stay and Early Mediation filed by defendants | C. Carson | 0.1 | 450 | $45.00 |
| 4/15/2019 | reviewed application for Stay and Early Mediation filed by defendants sent via mail | C. Carson | 0.1 | 450 | $45.00 |
| 4/16/2019 | reviewed Order granting application for stay and early mediation and staying case for defendants; instructed assistant to email defense counsel re mediator selection | C. Carson | 0.2 | 450 | $90.00 |

9845 Erma Road, Suite 300
San Diego, CA 92131

Phone: 858-375-7385
Fax: 888-422-5191

# Center for Disability Access

## Billing Statement

| Date | Description | Biller | Time | Hourly Rate | Amount |
|------|-------------|--------|------|-------------|--------|
| 4/16/2019 | instructed assistant to contact and communicate with defense counsel's office requesting a call back to discuss case/settlement | P. Grace | 0.1 | 550 | $55.00 |
| 4/22/2019 | instructed assistant to email defense counsel re mediator selection | C. Carson | 0.1 | 450 | $45.00 |
| 4/24/2019 | emailed defense counsel re mediator selection | P. Grace | 0.1 | 550 | $55.00 |
| 4/25/2019 | drafted plaintiff's case statement; instructed assistant to file | D. Price | 1 | 450 | $450.00 |
| 4/29/2019 | instructed assistant to send a follow up email to defense counsel's assistant re mediator selection | P. Grace | 0.1 | 550 | $55.00 |
| 5/7/2019 | instructed assistant to send a follow up email to defense counsel's assistant re mediator selection | P. Grace | 0.1 | 550 | $55.00 |
| 5/8/2019 | reviewed Notice of Assignment of Panel Mediator Stephen M. Benardo | C. Carson | 0.1 | 450 | $45.00 |
| 5/16/2019 | reviewed email correspondence from mediator Benardo accepting to serve as mediator and re scheduling a pre mediation phone conference, general instructions re mediation, etc.; reviewed mediator's resume | C. Carson | 0.2 | 450 | $90.00 |
| 5/17/2019 | instructed assistant to email mediator Benardo providing availability of plaintiff's counsel for scheduling pre mediation phone conference; reviewed mediator's response confirming time for call | C. Carson | 0.1 | 450 | $45.00 |
| 5/17/2019 | Instructed assistant to email mediator directing him to contact handling counsel Ray Ballister for pre mediation conference call | C. Carson | 0.1 | 450 | $45.00 |
| 5/17/2019 | reviewed email from defense counsel requesting a copy of proposed settlement agreement | P. Grace | 0.1 | 550 | $55.00 |
| 5/20/2019 | responded to defense counsel's email requesting copy of proposed settlement agreement; requested defense counsel to call back and reply to several messages left for them | P. Grace | 0.2 | 550 | $110.00 |
| 5/21/2019 | reviewed email from defense counsel requesting a copy of proposed settlement agreement in advance of mediation | P. Grace | 0.1 | 550 | $55.00 |
| 5/21/2019 | Phone call with mediator Benardo re mediation date; notes to file | R. Ballister | 0.2 | 550 | $110.00 |

# Center for Disability Access

## Billing Statement

| Date | Description | Biller | Time | Hourly Rate | Amount |
|------|-------------|--------|------|-------------|--------|
| 5/21/2019 | reviewed mediator Benardo's email instructing to send plaintiff's proposed settlement agreement to defense counsel for review in advance of mediation and setting up a mutually available mediation date | R. Ballister | 0.1 | 550 | $55.00 |
| 5/21/2019 | emailed defense counsel re response to Plaintiff's case statement, sent him a copy of proposed settlement agreement | R. Ballister | 0.1 | 550 | $55.00 |
| 5/21/2019 | instructed assistant to contact client re his availability for setting up a mediation date | R. Ballister | 0.1 | 550 | $55.00 |
| 5/21/2019 | emailed mediator and defense counsel re mutually available dates for setting up mediation, also proposing a stipulation to extend mediation in case those dates cannot be accommodated; reviewed mediator and defense counsel's response re the same | R. Ballister | 0.2 | 550 | $110.00 |
| 5/22/2019 | instructed assistant to contact client re his availability to set up mediation date; assistant left a voice message and later had a phone call with client | R. Ballister | 0.2 | 550 | $110.00 |
| 5/22/2019 | emailed defense counsel and mediator providing dates for mediation based on client's availability; reviewed mediator Benardo and defense counsel's assistant's response confirming mediation date to 6/19 | R. Ballister | 0.1 | 550 | $55.00 |
| 5/23/2019 | instructed assistant to send confirmation of mediation date on 6/19 to mediator Benardo | R. Ballister | 0.1 | 550 | $55.00 |
| 5/23/2019 | reviewed email from mediator Benardo re filing stipulation to extend mediation so a notice of mediation date can be issued | R. Ballister | 0.1 | 550 | $55.00 |
| 5/23/2019 | Drafted Stipulation to extend mediation completion date and proposed Order thereon; instructed assistant to email defense counsel for review and approval for filing | R. Ballister | 0.3 | 550 | $165.00 |
| 5/23/2019 | instructed staff to notify client re mediation schedule | C. Carson | 0.1 | 450 | $45.00 |
| 5/29/2019 | reviewed Defendant's case statement sent by defense counsel's assistant | D. Price | 0.4 | 450 | $180.00 |
| 6/11/2019 | reviewed correspondence from mediator Benardo re mediation date, request for extension, etc.; instructed assistant to respond confirming mediation date | R. Ballister | 0.2 | 550 | $110.00 |

Case 2:18-cv-09055-SJO-JC Document 43-9 Filed 09/02/20 Page 33 of 39 Page
ID #:583
Case 4:18-cv-01817-DSF-SK Document 80-5 Filed 08/09/19 Page 5 of 5 Page ID #:199
Page 5

# Center for Disability Access

## Billing Statement

| Date | Description | Biller | Time | Hourly Rate | Amount |
|------|-------------|--------|------|-------------|--------|
| 6/11/2019 | reviewed defense counsel's assistant's response to mediator Benardo's correspondence confirming availability on mediation date; reviewed mediator Benardo's response requesting mediation brief | R. Ballister | 0.1 | 550 | $55.00 |
| 6/12/2019 | reviewed Notice of Mediation Date | C. Carson | 0.1 | 450 | $45.00 |
| 6/13/2019 | Instructed assistant to notify client re mediation schedule | C. Carson | 0.1 | 450 | $45.00 |
| 6/17/2019 | instructed assistant to email Plaintiff's Case Statement to mediator Benardo | D. Price | 0.1 | 450 | $45.00 |
| 6/18/2019 | reviewed billing; removed items that could be taken as duplicative or unreasonable; redacted as appropriate | M. Potter | 0.2 | 595 | $119.00 |
| 6/18/2019 | prepared for mediation conference | D. Price | 2 | 450 | $900.00 |
| 6/19/2019 | travel to and attendance at mediation conference | D. Price | 6 | 450 | $2,700.00 |
| 6/21/2019 | reviewed and filled statement of consent to proceed before United States Magistrate Judge; emailed to defense counsel for approval to file; reviewed consent form signed by defense counsel; instructed assistant to file | D. Price | 0.2 | 450 | $90.00 |
| 6/24/2019 | drafted Notice of Appearance of Counsel; instructed assistant to file | A. Seabock | 0.2 | 450 | $90.00 |
| 6/24/2019 | drafted Notice of Settlement; instructed assistant to file | A. Seabock | 0.3 | 450 | $135.00 |
| 6/24/2019 | reviewed mediation report filed by mediator | C. Carson | 0.1 | 450 | $45.00 |
| 6/26/2019 | reviewed order dismissing case due to settlement | C. Carson | 0.1 | 450 | $45.00 |
| 7/28/2019 | reviewed billing; removed items that could be taken as duplicative or unreasonable; redacted as appropriate | M. Potter | 0.3 | 595 | $178.50 |
| EST | Drafting the plaintiff's fee motion with supporting paperwork | D. Price | 2 | 450 | $900.00 |
| EST | Drafted declaration in support of plaintiff's fee motion | M. Potter | 0.3 | 595 | $178.50 |
| EST | Time to review opposition brief, draft the reply brief, attend oral argument | D. Price | 8 | 450 | $3,600.00 |
| **Totals** | | | **33.4** | | **$15,740.50** |

9845 Erma Road, Suite 300
San Diego, CA 92131

Phone: 858-375-7385
Fax: 888-422-5191

# Exhibit E

**SALARY TABLE 2019-DCB**

**INCORPORATING THE 1.4% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 29.32%**

**FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA**

**TOTAL INCREASE: 2.27%**

**EFFECTIVE JANUARY 2019**

*Hourly Basic (B) Rates by Grade and Step*
*Hourly Title 5 Overtime (O) Rates for FLSA-Exempt Employees by Grade and Step*

| Grade | B/O | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|-------|-----|--------|--------|--------|--------|--------|--------|--------|--------|--------|---------|
| 1 | B | $ 11.80 | $ 12.20 | $ 12.59 | $ 12.98 | $ 13.37 | $ 13.60 | $ 13.99 | $ 14.38 | $ 14.40 | $ 14.76 |
|   | O | 17.70 | 18.30 | 18.89 | 19.47 | 20.06 | 20.40 | 20.99 | 21.57 | 21.60 | 22.14 |
| 2 | B | 13.27 | 13.59 | 14.03 | 14.40 | 14.56 | 14.99 | 15.42 | 15.84 | 16.27 | 16.70 |
|   | O | 19.91 | 20.39 | 21.05 | 21.60 | 21.84 | 22.49 | 23.13 | 23.76 | 24.41 | 25.05 |
| 3 | B | 14.48 | 14.96 | 15.45 | 15.93 | 16.41 | 16.89 | 17.38 | 17.86 | 18.34 | 18.82 |
|   | O | 21.72 | 22.44 | 23.18 | 23.90 | 24.62 | 25.34 | 26.07 | 26.79 | 27.51 | 28.23 |
| 4 | B | 16.26 | 16.80 | 17.34 | 17.88 | 18.42 | 18.96 | 19.50 | 20.05 | 20.59 | 21.13 |
|   | O | 24.39 | 25.20 | 26.01 | 26.82 | 27.63 | 28.44 | 29.25 | 30.08 | 30.89 | 31.70 |
| 5 | B | 18.19 | 18.79 | 19.40 | 20.00 | 20.61 | 21.22 | 21.82 | 22.43 | 23.03 | 23.64 |
|   | O | 27.29 | 28.19 | 29.10 | 30.00 | 30.92 | 31.83 | 32.73 | 33.65 | 34.55 | 35.46 |
| 6 | B | 20.27 | 20.95 | 21.62 | 22.30 | 22.98 | 23.65 | 24.33 | 25.00 | 25.68 | 26.36 |
|   | O | 30.41 | 31.43 | 32.43 | 33.45 | 34.47 | 35.48 | 36.50 | 37.50 | 38.52 | 39.54 |
| 7 | B | 22.53 | 23.28 | 24.03 | 24.78 | 25.53 | 26.28 | 27.03 | 27.78 | 28.54 | 29.29 |
|   | O | 33.80 | 34.92 | 36.05 | 37.17 | 38.30 | 39.42 | 40.55 | 41.67 | 42.81 | 43.94 |
| 8 | B | 24.95 | 25.78 | 26.61 | 27.44 | 28.28 | 29.11 | 29.94 | 30.77 | 31.60 | 32.43 |
|   | O | 37.43 | 38.67 | 39.92 | 41.16 | 42.42 | 43.67 | 44.91 | 45.53 | 45.53 | 45.53 |
| 9 | B | 27.56 | 28.47 | 29.39 | 30.31 | 31.23 | 32.15 | 33.07 | 33.98 | 34.90 | 35.82 |
|   | O | 41.34 | 42.71 | 44.09 | 45.47 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 |
| 10 | B | 30.35 | 31.36 | 32.37 | 33.38 | 34.39 | 35.40 | 36.41 | 37.42 | 38.44 | 39.45 |
|    | O | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 |
| 11 | B | 33.34 | 34.45 | 35.56 | 36.68 | 37.79 | 38.90 | 40.01 | 41.12 | 42.23 | 43.34 |
|    | O | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 |
| 12 | B | 39.96 | 41.29 | 42.63 | 43.96 | 45.29 | 46.62 | 47.95 | 49.29 | 50.62 | 51.95 |
|    | O | 45.53 | 45.53 | 45.53 | 45.53 | 45.53 | 46.62 | 47.95 | 49.29 | 50.62 | 51.95 |
| 13 | B | 47.52 | 49.10 | 50.69 | 52.27 | 53.85 | 55.44 | 57.02 | 58.61 | 60.19 | 61.77 |
|    | O | 47.52 | 49.10 | 50.69 | 52.27 | 53.85 | 55.44 | 57.02 | 58.61 | 60.19 | 61.77 |
| 14 | B | 56.15 | 58.02 | 59.90 | 61.77 | 63.64 | 65.51 | 67.38 | 69.26 | 71.13 | 73.00 |
|    | O | 56.15 | 58.02 | 59.90 | 61.77 | 63.64 | 65.51 | 67.38 | 69.26 | 71.13 | 73.00 |
| 15 | B | 66.05 | 68.25 | 70.45 | 72.66 | 74.86 | 77.06 | 79.26 | 79.78 | 79.78 | 79.78 |
|    | O | 66.05 | 68.25 | 70.45 | 72.66 | 74.86 | 77.06 | 79.26 | 79.78 | 79.78 | 79.78 |

\* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2019 Locality Pay Area Definitions page: http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2019/locality-pay-area-definitions/

# Exhibit F

**SALARY TABLE 2019-LA**

**INCORPORATING THE 1.4% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 31.47%**

**FOR THE LOCALITY PAY AREA OF LOS ANGELES-LONG BEACH, CA**

**TOTAL INCREASE: 2.10%**

**EFFECTIVE JANUARY 2019**

*Hourly Basic (B) Rates by Grade and Step*
*Hourly Title 5 Overtime (O) Rates for FLSA-Exempt Employees by Grade and Step*

| Grade | B/O | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | B | $ 12.00 | $ 12.40 | $ 12.80 | $ 13.20 | $ 13.60 | $ 13.83 | $ 14.22 | $ 14.62 | $ 14.64 | $ 15.01 |
|   | O | 18.00 | 18.60 | 19.20 | 19.80 | 20.40 | 20.75 | 21.33 | 21.93 | 21.96 | 22.52 |
| 2 | B | 13.49 | 13.81 | 14.26 | 14.64 | 14.80 | 15.24 | 15.67 | 16.11 | 16.54 | 16.98 |
|   | O | 20.24 | 20.72 | 21.39 | 21.96 | 22.20 | 22.86 | 23.51 | 24.17 | 24.81 | 25.47 |
| 3 | B | 14.72 | 15.21 | 15.70 | 16.19 | 16.68 | 17.17 | 17.67 | 18.16 | 18.65 | 19.14 |
|   | O | 22.08 | 22.82 | 23.55 | 24.29 | 25.02 | 25.76 | 26.51 | 27.24 | 27.98 | 28.71 |
| 4 | B | 16.53 | 17.08 | 17.63 | 18.18 | 18.73 | 19.28 | 19.83 | 20.38 | 20.93 | 21.48 |
|   | O | 24.80 | 25.62 | 26.45 | 27.27 | 28.10 | 28.92 | 29.75 | 30.57 | 31.40 | 32.22 |
| 5 | B | 18.49 | 19.10 | 19.72 | 20.34 | 20.95 | 21.57 | 22.19 | 22.80 | 23.42 | 24.03 |
|   | O | 27.74 | 28.65 | 29.58 | 30.51 | 31.43 | 32.36 | 33.29 | 34.20 | 35.13 | 36.05 |
| 6 | B | 20.61 | 21.30 | 21.98 | 22.67 | 23.36 | 24.05 | 24.73 | 25.42 | 26.11 | 26.79 |
|   | O | 30.92 | 31.95 | 32.97 | 34.01 | 35.04 | 36.08 | 37.10 | 38.13 | 39.17 | 40.19 |
| 7 | B | 22.90 | 23.67 | 24.43 | 25.19 | 25.96 | 26.72 | 27.48 | 28.25 | 29.01 | 29.77 |
|   | O | 34.35 | 35.51 | 36.65 | 37.79 | 38.94 | 40.08 | 41.22 | 42.38 | 43.52 | 44.66 |
| 8 | B | 25.36 | 26.21 | 27.05 | 27.90 | 28.75 | 29.59 | 30.44 | 31.28 | 32.13 | 32.97 |
|   | O | 38.04 | 39.32 | 40.58 | 41.85 | 43.13 | 44.39 | 45.66 | 46.28 | 46.28 | 46.28 |
| 9 | B | 28.01 | 28.95 | 29.88 | 30.82 | 31.75 | 32.68 | 33.62 | 34.55 | 35.48 | 36.42 |
|   | O | 42.02 | 43.43 | 44.82 | 46.23 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 |
| 10 | B | 30.85 | 31.88 | 32.91 | 33.93 | 34.96 | 35.99 | 37.02 | 38.05 | 39.08 | 40.10 |
|   | O | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 |
| 11 | B | 33.89 | 35.02 | 36.15 | 37.28 | 38.41 | 39.54 | 40.68 | 41.80 | 42.94 | 44.07 |
|   | O | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 |
| 12 | B | 40.63 | 41.98 | 43.33 | 44.69 | 46.04 | 47.40 | 48.75 | 50.11 | 51.46 | 52.81 |
|   | O | 46.28 | 46.28 | 46.28 | 46.28 | 46.28 | 47.40 | 48.75 | 50.11 | 51.46 | 52.81 |
| 13 | B | 48.31 | 49.92 | 51.53 | 53.14 | 54.75 | 56.36 | 57.97 | 59.58 | 61.19 | 62.80 |
|   | O | 48.31 | 49.92 | 51.53 | 53.14 | 54.75 | 56.36 | 57.97 | 59.58 | 61.19 | 62.80 |
| 14 | B | 57.09 | 58.99 | 60.89 | 62.80 | 64.70 | 66.60 | 68.51 | 70.41 | 72.31 | 74.21 |
|   | O | 57.09 | 58.99 | 60.89 | 62.80 | 64.70 | 66.60 | 68.51 | 70.41 | 72.31 | 74.21 |
| 15 | B | 67.15 | 69.39 | 71.63 | 73.86 | 76.10 | 78.34 | 79.78 | 79.78 | 79.78 | 79.78 |
|   | O | 67.15 | 69.39 | 71.63 | 73.86 | 76.10 | 78.34 | 79.78 | 79.78 | 79.78 | 79.78 |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2019 Locality Pay Area Definitions page: http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2019/locality-pay-area-definitions/

# Exhibit G

| Exhibit F: Adjustments to Laffey Matrix for Los Angeles | | | |
|---|---|---|---|
| **Experience** | **2019-2020 D.C. Rates** | **2019-2020 L.A. Rates** | **Potter Handy Timekeepers** |
| 31+ years | $637 | $648 | |
| 21-30 years | $595 | $605 | Mr. Handy, Ms. Grace, Mr. Ballister |
| 16-20 years | $566 | $575 | |
| 11-15 years | $510 | $518 | |
| 8-10 years | $433 | $440 | Mr. Price, Ms. Carson, |
| 6-7 years | $372 | $378 | Ms. Seabock, Ms. McAllister |
| 4-5 years | $365 | $371 | Ms. Gunderson, Mr. Smith |
| 2-3 years | $353 | $359 | |
| Less than 2 years | $319 | $324 | |
| Paralegals and Law Clerks | $173 | $176 | |